**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | |
|---|---|
| **WENDY ANN MACASKILL** § | |
| **Plaintiff** § | |
| § | |
| **v.** § | _____ |
| § | |
| **BELL TEXTRON, INC. F/K/A** § | |
| **BELL HELICOPTER TEXTRON, INC.** § | **JURY DEMANDED** |
| **Defendant** § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiff, Wendy Ann Macaskill (referred to herein as "Plaintiff"), complaining of Defendant Bell Textron, Inc. f/k/a Bell Helicopter Textron, Inc. ("Bell"). For good and sufficient cause of action, Plaintiff would respectfully show unto this Honorable Court the following:

**I. PARTIES**

1. Plaintiff, Wendy Ann Macaskill ("Plaintiff"), is the surviving mother of Mark Stoxreiter, who died unexpectedly on January 21, 2021, when the medical helicopter he was piloting crashed in South Africa. At the time of his death, Mark Stoxreiter was a citizen of South Africa.

2. Defendant BELL TEXTRON, INC. formerly known as BELL HELICOPTER TEXTRON, INC. ("Defendant Bell") is a for-profit corporation that was incorporated in the state of Delaware, is doing business in the United States, including Texas, and has its principal place of business in Fort Worth, Texas. Service on Defendant Bell may be had by serving its registered agent, Chandria Mercer, at 3255 Bell Flight Boulevard, Fort Worth, Texas 76118.

3. As it relates to the event giving rise to this Complaint, Plaintiff invokes the right to institute this suit against any entity that was conducting business using the assumed or common names of Bell. Plaintiff respectfully requests the Court order Defendant Bell to substitute its true name if different from the names stated herein.

## II. JURISDICTION AND VENUE

4. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state. Plaintiff is a citizen of South Africa. Defendant Bell was incorporated in the state of Delaware and has its principal place of business in Fort Worth, Texas. Furthermore, the Court has jurisdiction over this matter because the amount in controversy falls within the minimum jurisdictional limits of this Court as Plaintiff sues for ten million dollars ($10,000,000.00).

5. Pursuant to 28 U.S.C. § 1391(b), (c)(2) and (d), venue is proper in the Southern District of Texas because the Court has personal jurisdiction over Defendant Bell and Defendant Bell maintains sufficient contacts with the Southern District to subject it to personal jurisdiction.

6. Maintaining this action in the Southern District of Texas will: 1) allow ease of access to sources of proof; 2) subpoena non-party fact witnesses; 3) minimize the cost of attendance for willing witnesses; and 4) reduce other practical problems that make the trial of a civil action easy, expeditious and less expensive.

8. In addition, the Southern District of Texas will: 1) not have administrative difficulties due to court congestion; 2) have an interest in deciding the matters set forth in this civil action; 3) be familiar with the causes of action and defenses; and 4) not encounter unnecessary problems of conflict of laws or in the application of foreign law.

## III. FACTUAL ALLEGATIONS

9. On or about January 1, 2021, a Bell helicopter (model Bell 430, registration number ZT-RRT)(the "Helicopter") piloted by Mark Stoxreiter and carrying four (4) passengers, crashed in South Africa during an emergency flight. All passengers, including Mark Stoxreiter, were killed.

10. At the time of the crash, Mark Stoxrieter was working as a pilot for Netcare 911, which is a company providing medical flight services on the Helicopter.

11. The weather did not cause or contribute to the crash or the deaths of the individuals on the Helicopter, nor did Mark Stoxtrieter's education, training, experience or pilot performance. A defective main rotor pitch link clevis, blades, and bearings caused the Helicopter to crash. In addition, without limitation, Defendant Bell failed to: 1) issue adequate inspection and maintenance recommendations related to the operation and main rotor components replacement, in particular for the main rotor pitch link clevis for the blades and the respective universal bearings; 2) issue adequate time margin recommendations for maintenance and replacement of the main rotor pitch link clevis and universal bearings; 3) issue adequate Non Destructive Tests (NDT) recommendations to be performed on the main rotor pitch link clevis and universal bearings; and 4) issue adequate safety recommendations that make possible the identification of eventual evidences of the main rotor pitch link clevis and universal bearing malfunctioning and respective tolerance margins.

12. Defendant Bell was in the business of designing, manufacturing, fabricating, converting, maintaining, repairing, modifying, designing, assembling, distributing, certifying, testing, selling, inspecting, servicing, repairing, marketing, warranting, and advertising helicopters, including the Helicopter involved in the crash.

13. The Helicopter, including its component parts, was in substantially the same condition that it was in when it left the manufacturer and the manufacturer's representatives. The Helicopter had not been materially changed or altered from the time that it was manufactured, delivered, and certified airworthy by Defendant Bell.

14. Defendant Bell wrote, issued and/or approved service manuals, instructions, letters, bulletins, notices, advisories, and warnings for the Helicopter, and in some cases failed to issue such instructions, letters, bulletins, notices, advisories, and warnings, and established maintenance manuals, maintenance instructions, service bulletins, inspection schedules and service life schedules for the Helicopter, as alleged herein.

15. Defendant Bell knew, or in the exercise of reasonable care should have known, that its Helicopter would be used in the same manner for which it was designed and manufactured, for the carriage and transportation by air of crew and passengers and would be used according to the manuals and instructions published by Defendant Bell.

16. Plaintiffs are further informed and believe and allege that the fatal failures and the crash were the result of the defective design, manufacture, warning, testing, inspection, and assembly of the Helicopter.

17. Mark Stoxreiter, as the pilot of the Helicopter, was aware that he had been placed in imminent and hopeless peril and he apprehended the grave and dire circumstances in which he had been thrust. As a result of the crash, Mark Stoxrieter suffered pre-impact horror, fear and terror, pre-death horror, fear and terror, pain and suffering, physical injury and otherwise fatal injuries in a personal and pecuniary manner.

18. Plaintiff as the mother of Mark Stoxreiter have suffered from the death of her child. Plaintiff suffered loss of services, support, advice, care, comfort, maintenance, mental anguish,

camaraderie, companionship, and love. Plaintiff sustained economic and non-economic damages, and all other damages available by law.

19. Plaintiff respectfully request the opportunity to engage in discovery and amend this Complaint should additional information become available.

## IV. CAUSE OF ACTION AGAINST BELL

### A. NEGLIGENCE

20. Plaintiff incorporates by reference the facts and allegations in the preceding paragraphs, as if set forth fully herein.

21. On or about January 21, 2021, Mark Stoxreiter died due to the wrongful acts, neglects and/or defaults of Defendant Bell, its employees, and agents. At all times material hereto, Defendant Bell owed Plaintiff a duty of reasonable care.

22. At all relevant times, it was the duty of Defendant Bell, including its officers, agents and employees, to exercise ordinary care in the design, testing, manufacture, assembly, inspection, certification, sale, distribution, maintenance, repair, servicing, developing and issuing instructions, advisories, and warnings, including service intervals, inspection intervals and life limits regarding the Helicopter and its components, including the main rotor pitch link clevis and universal bearings, so as not to cause injury to or the death to those who used its products.

23. Notwithstanding these duties, Defendant Bell breached its duties in the design, testing, manufacture, assembly, certification, inspection, sale, lease, distribution, maintenance, repair, servicing, developing and issuing instructions, advisories, and warnings, including service intervals, inspection intervals and life limits regarding the Helicopter and its components, including the main rotor pitch link clevis and universal bearings.

24. Defendant Bell was negligent in the design, manufacture, distribution of the Helicopter and its components, including the main rotor pitch link clevis and universal bearings, by utilizing a design and materials prone to premature fracture and failure of certain components during normal and foreseeable operations. The fractures and failure mode would not have been detected in the ordinary course of pre-flight inspections, pursuant to Defendant Bell's maintenance manuals, or otherwise.

25. Defendant Bell, as the designer, manufacturer, or distributor of the Helicopter, had a duty to provide adequate warnings, instructions, training materials, advisories, and maintenance and inspection procedures and intervals to ensure safe operation of the Helicopter in normal flight, and it failed in that duty.

26. Defendant Bell was required to provide certain warnings, instructions, training materials, advisories, and maintenance, and inspection intervals and procedures to operators of the Helicopter to enable them to determine the airworthiness and proper operation of the Helicopter. Defendant Bell failed to warn, instruct, train and/or issue adequate advisories, maintenance and inspection procedures and other instructions regarding such dangers and/or issued inadequate advisories, warnings, instructions, training materials, and maintenance and inspection procedures and intervals.

27. On or about January 1, 2021, as a direct and proximate result of one or more negligent acts or omissions of Defendant Bell, the Helicopter suffered a catastrophic failure in flight that resulted in the crash and the death of the occupants in the Helicopter.

28. As a direct and proximate cause of the conduct of Defendant Bell, Plaintiff has suffered damages including loss of household income, service, consortium, support, advice, maintenance, mental anguish, comfort, camaraderie, companionship, love, and inheritance.

## B. STRICT LIABILITY FOR DEFECTIVE PRODUCT

29. Plaintiff incorporates by reference the facts and allegations in the preceding paragraphs, as if set forth fully herein.

30. Defendant Bell designed, manufactured, fabricated, converted, maintained, repaired, modified, designed, assembled, distributed, certified, sold, inspected, serviced, repaired, marketed, warranted, provided certain warnings, instructions, training materials, advisories, and maintenance, and inspection intervals and procedures to operators, and advertised the Helicopter, and each and every component part thereof.

31. Defendant Bell was required to design the Helicopter, including all service, maintenance and operations manuals so that it was free from design and manufacturing defects, and was required to design and manufacture a helicopter that would not fail in flight.

32. Defendant Bell was required to provide certain warnings, instructions, training materials and maintenance, and inspection intervals and procedures to operators of the Helicopter to enable them to determine the airworthiness and proper operation of the Helicopter. Defendant Bell failed to warn, instruct, train and/or issue adequate advisories, maintenance and inspection procedures, and other instructions regarding such dangers and/or issued inadequate advisories, warnings, instructions, training materials, and maintenance and inspection procedures and intervals.

33. The Helicopter was capable of causing, and in fact did cause, personal injury and death to users and consumers while being used in a manner reasonably foreseeable, thereby rendering the Helicopter unsafe and dangerous for use by any user or consumer.

34. On or about January 21, 2021, the Helicopter was being used for the purposes and in the manner for which it designed and manufactured, and in a manner that was reasonably

foreseeable to Defendant Bell. The Helicopter was in the same condition without significant change from the original condition when sold and delivered by Defendant Bell.

35. The Helicopter was defective, not fit for its intended purpose and was unreasonably dangerous by reason of defective design, manufacture, testing, certification, maintenance, repair, modification, assembly, service, inspection, warning, instruction, advisories, and sale on the part of Defendant Bell.

36. As a direct result of defects in Defendant Bell's design, manufacture, testing, certification, maintenance, repair, modification, assembly, service, inspection, warning, instruction and sale, the Helicopter, and each and every component part thereof, contained defects, causing the Helicopter to crash. Defendant Bell manufacturing and warnings concerning the main rotor pitch link clevis and universal bearings were deficient.

37. The defects in the Helicopter and the conduct of Defendant Bell were a producing cause of Mark Stoxreiter's death, and as a result, Plaintiff was injured and damaged as alleged herein.

38. On or about January 1, 2021, as a direct and proximate result of one or more negligent acts or omissions of Defendant Bell, the Helicopter suffered a catastrophic failure in flight that resulted in the crash and the death of the occupants in the Helicopter.

39. Mark Stoxreiter was aware that he had been placed in imminent and hopeless peril and he apprehended the grave and dire circumstances in which he had been thrust. As a result, the Estate of Mark Stoxreiter is entitled to recover for his conscious pain and suffering, mental anguish, and funeral expenses.

40. As a direct and proximate cause of the conduct of Bell, Plaintiff suffered damages including loss of loss of services, support, advice, care, comfort, maintenance, mental anguish,

camaraderie, companionship, and love loss of services, support, advice, care, comfort, maintenance, mental anguish, camaraderie, companionship, and love.

## C. BREACH OF WARRANTY

42. Plaintiff incorporates by reference the facts and allegations in the preceding paragraphs, as if set forth fully herein.

43. At the time the Helicopter was certified, sold, serviced, and delivered, through and including January 21, 2021, Defendant Bell expressly and/or impliedly warranted and represented that the Helicopter, including its instructions and warnings, were airworthy, of merchantable quality, fit and safe for the purposes for which it was designed, and free from defects. Defendant Bell further warranted that the instructions, warnings, and maintenance and inspection procedures and intervals regarding the Helicopter were adequate.

44. Plaintiff is informed, believes, and alleges that at the time the Helicopter was sold, certified and delivered, through the date of the crash, Defendant Bell breached its warranties in that the Helicopter was defective, not airworthy, not of merchantable quality, not fit and safe for the purpose for which it was designed, manufactured, assembled, inspected, tested, sold, certified, serviced, repaired, maintained, and intended to be used. Defendant Bell further breached said warranties in that the instructions, warnings, and maintenance and inspection procedures and intervals were not adequate. Defendant Bell's manufacturing and warnings concerning the main rotor pitch link clevis and universal bearings were deficient.

45. Plaintiff is informed, believes, and alleges that on the day of the crash, Mark Stoxrieter was an intended beneficiary of the warranties extended by Bell.

46. On or about September 26, 2016, as a direct and proximate result of the foregoing breach of warranties, the Helicopter failed in flight and crashed, killing Mark Stoxreiter, and as a result, Plaintiff was injured and damaged as alleged herein.

47. As a direct and proximate cause of the conduct of Defendant Bell, Plaintiff suffered damages including loss of services, support, advice, care, comfort, maintenance, mental anguish, camaraderie, companionship, and love.

### D. VICARIOUS LIABILITY

49. At all times material hereto, Defendant Bell is vicariously liable in all respects for the torts of its employees and agents under the theory of Respondeat Superior. The negligent acts of the employees and agents of Defendant Bell were a proximate cause of Plaintiff's injuries. These torts were committed while the employees and agents were acting within their scope of employment with Defendant Bell – that is, the acts were within the employees' or agents' general authority, in furtherance of Defendant Bell's business, and for the accomplishment of the object for which the employees and agents were hired.

### V. JURY DEMAND

50. Pursuant to Fed. R. Civ. Pro. 38(b), Plaintiffs demand a trial by jury.

### VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Wendy Ann Macaskill requests that Defendant Bell be cited to appear and answer herein, and, after due process of law, Plaintiff have judgment against said Defendant for all damages, general, for wrongful death action, for a survival action and/or applicable law, including, but not limited to, loss of services, support, advice, care, comfort, maintenance, mental anguish, camaraderie, companionship, and love. Plaintiff also prays for affirmative relief, pre-judgment interest, post-judgment interest, attorney's fees, expert fees,

costs of suit, and such other and further relief, both general and special, in law and in equity, to which Plaintiff may be justly entitled.

        Respectfully submitted,

        By:/s/ *Manuel E. Solis*
        Manuel E. Solis
        Texas Bar No. 18826790
        Email: msolis@lawsolis.com
        LAW OFFICES OF MANUEL SOLIS, PC
        6657 Navigation Blvd.
        Houston, TX 77011
        Phone: (713) 277-7838
        Fax: (281) 377-3924

        ATTORNEY FOR PLAINTIFFS